UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Re: ALAN GIORDANI as proposed Executor of the Estate of decedent Nancy Giordani, and ALAN GIORDANI individually.

18-CV-3112 (CM)

ORDER OF DISMISSAL

COLLEEN McMAHON, Chief United States District Judge:

Petitioner,[1] proceeding *pro se*, brings this action under Rule 27 for "Preaction Relief." Petitioner claims entitlement to protective orders arising from alleged civil rights violations under § 1983.

In addition to this submission, Petitioner filed an *in forma pauperis* application, but declared that he was able to pay the costs of these proceedings. The Court therefore denied the application, and Petitioner paid the relevant fees.

For the reasons set forth below, the Court denies Petitioner's request and dismisses the action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

## STANDARD OF REVIEW

The Court has the authority to dismiss a filing, even when the plaintiff has paid the filing fee, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (*per curiam*) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (*per curiam*) (holding that Court of Appeals has inherent authority to dismiss frivolous appeal)), or that the Court lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). Petitioner, who is proceeding *pro se* in this matter, is currently

---

[1] Rule 27 characterizes a request made to perpetuate testimony as a "petition" and the party making such a request as "the petitioner." Fed. R. Civ. P. 27. Therefore, this order refers to Alan Giordani, who filed the request, as the "Petitioner." In the request, Giordani also refers to himself as a "Petitioner."

admitted to the New York State Bar. Because Petitioner is an attorney, he is not entitled to the special solicitude usually granted to *pro se* litigants. *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).

## BACKGROUND

Petitioner Alan Giordani requests "preaction relief" to enable him to prepare a 42 U.S.C. § 1983 claim against the alleged conspirators involved in a scheme to construct and operate a beer garden. He asserts that a commercial development that includes a beer garden ("the beer garden") encroached on his private driveway, co-owned by him and his neighbors. As a result of the scheme, the alleged conspirators allowed the beer garden to operate in violation of local zoning ordinances and allowed patrons to continually trespass on Petitioner's property.

Since 1997, when the encroachment first occurred, Petitioner has filed numerous complaints and requested the assistance of several Queens County, New York City, and New York State officials. Petitioner claims that the alleged conspirators refused to intervene because of their "illegal arrangement and special relationship" with the beer garden owner and patrons, and that they did so to "unjustly enrich" themselves and consolidate political power at the expense of Petitioner's civil rights. He also alleges that a "patronage" system for appointing judges "may" exist, and that the system prevented him from obtaining relief in the state courts on this matter in *Giordani v Horwin Realty Co.* No. 15667/1997 (N.Y. Sup Ct. July 22, 1997) ("*Giordani*"). Petitioner filed that action in 1997, and he lost when the court granted summary judgment for the defendants. He also asserts that this system prevented him from succeeding on unrelated cases brought in state court in Queens County on behalf of his clients.

Petitioner claims that the encroachment and the continued presence of the beer garden is an unconstitutional "taking" under the Fifth Amendment and "a seizure and theft of valuable property rights" under the Fourth Amendment. He also claims that the beer garden's operation

and the "menace of bar room thugs" produced a level of noise and anxiety that resulted in "inhuman and degrading treatment" constituting torture in violation of the Eighth Amendment.

Furthermore, Petitioner claims, his neighbors were likely selected as targets, in violation of the Fourteenth Amendment, because they are foreign nationals and immigrants. He also asserts that the alleged conspirators mistreated him and his family, in violation of the First Amendment, because his late mother was "readily identifiable as a devout Roman Catholic" and his family holds conservative values that "are not in lockstep" with the "political agenda" of the Democratic Party in New York, or nationally. Additionally, Petitioner claims that he was subjected to a "harassment, surveillance and spying campaign" to "suppress [his] further objections through intimidation." He also expresses concerns about officials including him on a "political enemies list" in retaliation for his complaints, resulting in "illicit . . . surveillance" and excessive investigation.

Petitioner also asserts that the alleged conspirators conspired to deny him and his neighbors the right to vote. He claims that Queens County officials worked to "suppress the vote" and may have engaged in voter fraud, and that the "patronage system has transformed New York State and more specifically Queens County from a constitutional democracy into a kleptocracy . . . resulting in the deprivation of Petitioner's civil rights."

Several of Petitioner's claims arise out of the actions of the New York City Police Department ("NYPD"). Petitioner asserts, for example, that off-duty NYPD officers frequent the beer garden, in violation of the Third Amendment, as money provided by the federal government caused "the [NYPD] to evolve into a quasi-military organization." He also alleges that the NYPD and the State of New York are involved in "successive firearms licensing scandals" that violate New York City residents' Second Amendment rights. According to Petitioner, these

scandals have provided "quasi-judicial discretion to non-judges" through a "hyper restrictive licensing process" that denies due process. He claims that these licensing regulations may be used to further a "caste system" by "issuing valuable permits to insiders and depriving them to outsiders." Petitioner believes that, as a result of these policies, he would be unable to "acquire [the] tools, gear, and kit necessary and proper to undertake meaningful self-defense measures" should he attempt to protect himself from anticipated retaliation resulting from his claims.

Petitioner requests that the Court provide the following: (1) "An order appointing a Federal Magistrate and/or Federal Monitor, including directions and protective measures in the event New York State or City targets the Petitioner with any form of reprisal"; (2) "An order directing the Queens Country Clerk's Office to transfer to [the] District Court [the *Giordani* file] together with any and all files [the] Court deems relevant toward the disposition of the matters described with[in]"; (3) "An order enjoining the Queens County Clerk Commissioner of Jurors Office from further enforcement on it[s] jury process and demands, until such a time that this Court deems appropriate"; and (4) "An order compelling the disclosure of all relevant documents and official records, memos, and data etc., as part of the comprehensive disclosure demands anticipated with this matter."

## DISCUSSION

### A.   Petition for Preaction Relief

Rule 27 of the Federal Rules of Civil Procedure authorizes the taking of a deposition prior to commencing an action by "a person who wants to perpetuate testimony about any matter cognizable in a United States court." Fed. R. Civ. P. 27. But "the purpose of [Rule 27] is to preserve and perpetuate known testimony, not to provide litigants with a vehicle for the ascertainment of evidence." *Bryant v. Am. Fed'n of Musicians of the US & Canada*, No. 14-CV-2598 (PAC) (HBP), 2015 WL 7301076, at *2 (S.D.N.Y. Nov. 18, 2015), *aff'd sub nom. Bryant*

4

*v. Am. Fed'n of Musicians of the United States & Canada*, 666 F. App'x 14 (2d Cir. 2016) (quoting *Shuster v. Prudential Sec. Inc.*, No. 91-cv-901(RWS), 1991 WL 102500, at *1 (S.D.N.Y. June 6, 1991)). "It is not a method of discovery to determine whether a cause of action exists; and, if so, against whom action should be instituted." *Id.*

To prevail on his request for a Rule 27 deposition, Petitioner must satisfy three elements:

> First, [he] must furnish a focused explanation of what [he] anticipate[s] any testimony would demonstrate. Such testimony cannot be used to discover evidence for the purpose of filing a complaint. Second, [he] must establish in good faith that [he] expect[s] to bring an action cognizable in federal court, but [is] presently unable to bring it or cause it to be brought. Third, [Petitioner] must make an objective showing that without a Rule 27 [deposition,] known testimony would otherwise be lost, concealed, or destroyed.

*In Re Allegretti*, 229 F.R.D. 93, 96 (S.D.N.Y. Aug. 2, 2005). Petitioner has failed to satisfy any of these elements. Thus, his request for preaction relief is denied.

B.  **Other Claims for Relief**

In addition to requesting relief under Rule 27, Petitioner claims he is entitled to protective orders arising from alleged civil rights violations under § 1983. The Court lacks subject matter jurisdiction over these claims and, therefore, cannot provide the requested relief.

1.  **Rooker-Feldman**

To the extent that Petitioner challenges the outcome of *Giordani*, or seeks a federal review of a state court matter, such a claim is barred under the *Rooker-Feldman* doctrine. The doctrine – created by two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983) – precludes federal district courts from reviewing final judgments of the state courts. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that federal district courts are barred from deciding cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting

district court review and rejection of those judgments."). The *Rooker-Feldman* doctrine applies where the federal-court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014). Here, the doctrine applies because Petitioner lost in state court when his case was dismissed on summary judgement, and this court cannot review that decision. Thus, any claim Petitioner seeks to reassert arising out of his state court matter is barred under the *Rooker-Feldman* doctrine.

### 2. Standing and Lack of Controversy

Article III, Section 2 of the Constitution limits the jurisdiction of the federal courts "to the resolution of 'cases' and 'controversies.'" *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citation and internal quotation marks omitted). This requires federal courts to adjudicate only "actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013). Standing to bring a lawsuit is a threshold requirement that prevents a plaintiff from bringing claims before a court unless there exists a case or controversy. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("[W]hether the plaintiff has made a 'case or controversy' . . . within the meaning of Article III . . . is the threshold question in every federal case, determining the power of the court to entertain the suit."); *see also Arizonans for Official English v. Ariz.*, 520 U.S. 43, 64 (1997). The burden of establishing standing to bring a lawsuit rests with the party bringing the action. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To have standing to sue in a federal court, a plaintiff must show that: (1) he has suffered "an invasion of a legally protected interest which is concrete and particularized, and actual and imminent, not conjectural or hypothetical"; (2) his injury is "fairly traceable to the challenged

6

action of the defendant and not the result of the independent action of some third party not before the court"; and (3) "the injury will be redressed by a favorable decision." *Id*. at 560-61 (internal quotations omitted). "'If [a] plaintif[f] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [his] claim.'" *Mahon*, 683 F.3d at 62 (citation omitted). And "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the [claim]." Fed. R. Civ. P. 12(h)(3).

Petitioner fails to establish standing to bring claims arising out of his interactions with the alleged conspirators. First, while Petitioner may allege personal injuries arising out of the continued operation of the beer garden, he fails to assert personal injuries arising out of his other interactions with the alleged conspirators. Second, even if he did satisfy the first element with respect to his beer garden claims, he fails to name any defendants, and therefore fails to connect any of his alleged injuries to the actions of a party before the Court.

Finally, Petitioner fails to assert how the relief he requests would redress his alleged injuries. It is not clear what his injuries are or how this Court could fashion a remedy to address them. Rather, it appears that Petitioner seeks federal intervention to protect him as he contemplates litigating a future matter. This Court does not have the jurisdiction to issue the protective orders. Because Petitioner cannot satisfy all of the requirements for any of his claims, he has not established standing to bring a claim, and the Court lacks subject matter jurisdiction and cannot provide the requested "protective relief." *See id*.

### 3. Venue

The Court notes that if Petitioner could establish standing and assert a claim not barred under the *Rooker-Feldman* doctrine, the Eastern District of New York ("EDNY") appears to be the proper venue for such an action. *See* 28 U.S.C. § 1391(b)(2). Should Petitioner choose to file a claim against a named party, he should do so in the EDNY. The Court offers no opinion on the

merits of such a claim and declines to transfer this petition in the interest of justice under 28 U.S.C. § 1404(a).

## CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Petitioner, and note service on the docket. Petitioner's request for Rule 27 relief is denied and his request for "protective relief" is dismissed for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: June 25, 2018
New York, New York

COLLEEN McMAHON
Chief United States District Judge